SUPERIOR COURT
OF THE
STATE OF DELAWARE

CRAIG A. KARSNITZ
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5264

Mr. Alfred Cannon
425 North Street
Seaford, Delaware 19973

Daniel C. Mulveny, Esquire
Department of Justice
Carvel State Building
820 N. French Street
Wilmington, Delaware 19801

RE:     ***Cannon v. BesTemps,***
**C.A. No. S18A-08-005**

On Appeal from the Unemployment Insurance Appeals Board: AFFIRMED

Date Submitted:     December 17, 2018
Date Decided:        January 7, 2019

Dear Mr. Cannon and Counsel:

Alfred Cannon appeals the decision of the Unemployment Insurance Appeals Board ("the

Board") to dismiss his appeal from an Appeals Referee's determination that Mr. Cannon is not

entitled to unemployment insurance benefits. The Board's decision is affirmed for the reasons

stated below.

I.      **Factual and Procedural Background**

Mr. Cannon was employed by BesTemps ("Employer") until December 5, 2017. Mr.

Cannon filed for unemployment insurance benefits effective February 4, 2018. A Claims Deputy

concluded Mr. Cannon had voluntarily left his employment because he failed to maintain contact

with Employer as required by the terms of his employment. The Claims Deputy's decision was

mailed March 12, 2018. Mr. Cannon appealed this decision and a hearing was held before an

Appeals Referee on April 12, 2018. The Appeals Referee affirmed the Claims Deputy's denial of benefits, finding Mr. Cannon had voluntarily terminated his relationship with Employer. The Appeals Referee's decision was mailed April 20, 2018. Mr. Cannon appealed to the Board. A hearing, originally scheduled for June 27, 2018, was rescheduled at Employer's request. Mr. Cannon failed to appear at the rescheduled hearing on August 8, 2018. Accordingly, the Board dismissed his appeal.

Mr. Cannon now appeals the Board's dismissal to this Court. Briefing is complete and the matter is ripe for decision.

## II.    Standard of Review

When reviewing a decision of the Board, this Court must determine whether the Board's findings and conclusions of law are free from legal error and are supported by substantial evidence in the record.[1] "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] The Court's review is limited: "It is not the appellate court's role to weigh the evidence, determine credibility questions or make its own factual findings, but merely to decide if the evidence is legally adequate to support the agency's factual findings."[3]

---

[1] *Unemployment Ins. Appeal Bd. v. Martin*, 431 A.2d 1265 (Del. 1981); *Pochvatilla v. U.S. Postal Serv.*, 1997 WL 524062 (Del. Super. Ct. June 9, 1997); 19 *Del. C.* § 3323(a) ("In any judicial proceeding under this section, the findings of the [Board] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law.").

[2] *Gorrell v. Division of Vocational Rehab.*, 1996 WL 453356, at *2 (Del. Super. Ct. July 31, 1996).

[3] *McManus v. Christiana Serv. Co.*, 1997 WL 127953, at *1 (Del. Super. Ct. Jan. 31, 1997).

## III. Discussion

Employer is a "temporary help firm" as defined by Delaware law. Title 19 of the Delaware Code provides:

> (a) For the purposes of this section, "temporary help firm" means a firm that hires its own employees and assigns them to clients to support or supplement the client's work force in work situations such as employee absences, temporary skill shortages, seasonal workloads and special assignments and projects. "Temporary employee" means an employee assigned to work for the clients of a temporary help firm.

> (b) A temporary employee of a temporary help firm will be deemed to have voluntarily quit employment if the employee does not contact the temporary help firm for reassignment upon completion of an assignment. Failure to contact the temporary help firm will not be deemed a voluntary quit unless the claimant has been advised of the obligation to contact the firm upon completion of assignments and that unemployment benefits may be denied for failure to do so.[4]

On September 14, 2017, Mr. Cannon signed an agreement with Employer ("the Policy") that provided, in pertinent part:

> I understand that if I am sent on an assignment, I am expected to report to work every day that I am scheduled and on time. You have the right to refuse any job. However... If you accept a position we offer you and then do not report to work, or do not seek work daily after each assignment, it will be reported to the unemployment office, which could result in a denial of unemployment benefits. If you do not want a particular assignment, please do not accept it, and wait for another assignment.[5]

On November 13, 2017, a treating physician placed Mr. Cannon on medical restrictions that limited his ability to bend, stand, walk, stoop, squat, push, climb, or reach overhead for prolonged periods of time. Mr. Cannon's last assignment with Employer was raking leaves at a mobile home park in Seaford, Delaware. When offered this assignment on December 4, 2017,

---

[4] 19 *Del. C.* § 3327.

[5] Record of the Proceedings Below, at p. 72 (hereinafter, "Record, at p. __").

3

Mr. Cannon expressed reservations about his ability to perform the work required but accepted the placement, nevertheless.

On December 5, 2017, Mr. Cannon reported late to the mobile home park. He then requested leave to attend his aunt's funeral. A representative for Employer granted him permission to leave and instructed him not to return to the job. Mr. Cannon alleges the representative told him Employer did not currently have any jobs that would comply with his work restrictions and that she would try to find a better fit for him. Mr. Cannon acknowledges he did not call in to Employer after December 5, because he was under the impression Employer would reach out to him if work meeting his restrictions materialized.

Mr. Cannon argues on appeal that he did not appear at the Board hearing because he did not receive written notice of the hearing due to "post office operations" until August 10, 2018. Mr. Cannon also contends the Appeals Referee incorrectly found he violated the Policy when, in fact, he had been told not to call in as required by the Policy.

A.     Notice

When Mr. Cannon initiated his claim for unemployment insurance benefits, he resided at 711 Woolford Street, Seaford, Delaware ("the Woolford Address"). The Claims Deputy's decision was mailed to the Woolford Address. Mr. Cannon sought review of the determination and notice of the hearing before the Appeals Referee was likewise sent to this address. At the hearing before the Appeals Referee, Mr. Cannon confirmed his current address was the Woolford Address. The Appeals Referee mailed her decision affirming the Claims Deputy's decision to Mr. Cannon at the Woolford Address. Mr. Cannon filed and appeal and requested a hearing before the Board. On June 13, 2018, notice of the Board hearing was sent to Mr. Cannon at the

4

Woolford Address. Employer sought a continuance of this hearing. The Board granted Employer's request and sent a notice of postponement to Mr. Cannon at the Woolford Address on June 26, 2018. Thereafter, a notice containing the new hearing date ("the Notice") was sent to Mr. Cannon at 425 North Street, Seaford, Delaware ("the North Address"). Mr. Cannon alleges he did not inform the Board of any change of address. He represents to the Court that an employee of the Department of Labor ("the Department") informed him that the Department had made the address change in response to communication it received from the United States Postal Service. Mr. Cannon's filings with this Court indicate he now resides at the North Address.

Mr. Cannon's complaint that he did not receive the Notice is, in essence, an argument that he did not receive due process. Due process requires that a party "have a full and fair opportunity to be heard in its own defense."[6] In the context of a hearing before the Board, a claimant has the right to notice and a hearing.[7] The notice must "inform the party of the time, place, and date of the hearing and the subject matter of the proceeding."[8] The Department is entitled to a rebuttable presumption "that mail has been received by the party to whom it was addressed if is correctly addressed, stamped, and mailed."[9] Even if the party did not receive the notice, "[o]nly where there is evidence that the Board was at fault for a misdelivery will a party's right to due process

---

[6] *Straley v. Advanced Staffing, Inc.*, 2009 WL 1228572, at *2 (Del. Super. Ct. Apr. 30, 2009), *aff'd*, 2009 WL 3451913 (Del. Oct. 27, 2009).

[7] *Id.*

[8] *Phillips v. Delhaize America, Inc.*, 2007 WL 2122139, at *2 (Del. Super. Ct. July 20, 2007) (citation omitted).

[9] *Straley*, 2009 WL 1228572, at *3.

5

There is no evidence that the Board erred in sending the Notice to the North Address. The prior mailing informing Mr. Cannon of a postponement of the Board hearing had, apparently, been returned as undeliverable to the Woolford Address and the post office supplied the Department with Mr. Cannon's forwarding address; that is, the North Address. As evidenced by his representations to this Court, Mr. Cannon does, in fact, now reside at the North Address. If Mr. Cannon contends that, because he had not filed a change of address with the Department, the Board should have continued to send mail to an address to which it knew mail was undeliverable, this argument does not hold water. Mr. Cannon asserts, without supporting evidence, that the postal service holds mail for two weeks before delivering the same after a receiving a change of address request. Assuming this allegation to be true, the Notice, mailed June 28, 2018, still would have been delivered by mid-July, well in advance of the Board hearing held on August 8, 2018.

In addition, by Mr. Cannon's own admission, he received actual notice of the Board hearing on August 7, the day prior to the hearing, when he spoke to someone at the Department. In both of his pleadings with this Court, Mr. Cannon acknowledges receiving oral notice of the date and time of the Board hearing in the afternoon of August 7.

In this case, Mr. Cannon had actual notice of the hearing and failed to appear. There is no evidence of error on the part of the Department in the mailing of the Notice. In light of those facts, the Board acted reasonably and within the confines of Delaware law in dismissing Mr. Cannon's appeal.

---

[10] *Id.*

6

**B.** **Merits of Underlying Decision**

On appeal, Mr. Cannon also attempts to reargue the facts of the case. Unfortunately, the only matter properly before the Court is whether the Board properly dismissed his appeal due to his failure to appear at the August 8 hearing.

As stated *supra*, this Court must review the case on the record and may not make factual findings. Moreover, this Court may not weigh questions of witness credibility.[11] In this case, the Appeals Referee's findings of fact and conclusions of law were supported by substantial evidence and free from legal error.

**IV.** **Conclusion**

For the reasons stated herein, the Board's decision to dismiss Mr. Cannon's appeal from the Appeals Referee's determination that he was disqualified from receiving unemployment insurance benefits is AFFIRMED.

IT IS SO ORDERED.

Very truly yours,

Craig A. Karsnitz

oc:     Prothonotary

cc:     BesTemps

---

[11] *McCoy v. Occidental Chem. Corp.*, 1996 WL 111126, at *3 (Del. Super. Ct. Feb. 7, 1996) ("It is within the discretion of the [tribunal] not the [reviewing] court[,] to weigh the credibility of witnesses and to resolve conflicting testimony.").

7